UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN BRANSON,<br><br>      Plaintiff,<br><br>      v.<br><br>ONTRAC LOGISTICS, INC., et al.,<br><br>      Defendants. | Case No.  26-cv-00835-RFL<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 26 |

Plaintiff Brian Branson originally filed this wage-and-hour class and representative action in state court against Defendants OnTrac Logistics, Inc. and Boehme Logistics LLC.  (Dkt. No. 1-1 ("Compl.").)  OnTrac removed the case pursuant to the Class Action Fairness Act ("CAFA").  (Dkt. No. 1.)  Branson moves to remand the case back to state court.  (Dkt. No. 26.) For the reasons that follow, the motion is **DENIED**.  This order assumes the parties' familiarity with the facts of this case, the applicable legal standards, and both sides' arguments.

***Timeliness of Removal***.  Branson argues that OnTrac's notice of removal was untimely under 28 U.S.C. § 1446(b)(1) because OnTrac did not remove the case within thirty days of service of the complaint.  (Dkt. No. 26 at 6.)[1]  However, section 1446(b)(1)'s thirty-day requirement was not triggered here because the case stated by the complaint was not "removable on its face." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005).  Though the complaint indicates that the putative class "is estimated to be greater than 100 individuals," (Compl. ¶ 30), its allegations regarding the total amount in controversy and the amount in

---

[1] All references to page numbers refer to ECF pagination.

controversy for each class member are indeterminate.  The complaint contains no allegations regarding the amount in controversy.  Even if some of Branson's claims have fixed statutory penalties, the complaint contains no allegations regarding the violation rates for the various claims.  Therefore, the amount in controversy for both the class and each of its members was not clear from the face of the complaint, and section 1446(b)(1)'s thirty-day requirement cannot be triggered by "materials outside the complaint" including payroll data in OnTrac's possession. *Montes v. Thorntons LLC*, No. 25-cv-05895-EKL, 2026 WL 765424, at *3 (N.D. Cal. Mar. 18, 2026) (quoting *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013)). Accordingly, because the case's removability was not clear from the face of Branson's complaint, section 1446(b)(1) does not apply, and OnTrac's removal was timely.

*Amount in Controversy*.  Branson also argues that OnTrac has not met its burden of proving that the amount in controversy exceeds five million dollars, as is required by CAFA. (Dkt. No. 26 at 9.)  As an initial matter, OnTrac's failure to provide evidence supporting the calculations in its notice of removal is not fatal.  The party seeking removal needs only to plausibly allege that the amount in controversy exceeds the jurisdictional threshold, and corroborating evidence is required only when those allegations are contested.  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  In its opposition to the remand motion, OnTrac has offered a declaration by Alex Velazquez, a Director of Last Mile Operations for OnTrac, who confirmed that there were at least 11,021 Service Providers in the putative class, and 5,060 Service Providers during the relevant limitations period.  (Dkt. No. 28-1 at ¶¶ 7–8.) Velazquez also stated that during the limitations period, Service Providers performed delivery services across a combined total of 100,163 weeks, and no Service Provider worked 41 or more weeks during that period.  (*Id*. at ¶¶ 8–9.)  In calculating the amount in controversy for Branson's accurate wage statement claim, OnTrac assumed Service Providers were paid weekly and that each wage statement they received was deficient.  (Dkt. No. 1 at 4.)  Combined with possible attorneys' fees of 25% of the overall recovery, OnTrac calculated a total amount in controversy in excess of twelve million dollars.  (*Id*. at 5.)

Branson argues that OnTrac's asserted employee counts, pay periods, and penalty totals lack evidentiary support. (Dkt. No. 26 at 9–11.) Irrespective of whether Branson's challenge to OnTrac's jurisdictional allegations is facial or factual, OnTrac's allegations pass muster. As described above, OnTrac's allegations plausibly suggest that the amount in controversy in the case exceeds five million dollars, as is required to survive a facial jurisdictional challenge. *See Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 965 (9th Cir. 2020). And OnTrac has proven its asserted amount in controversy by a preponderance, as is required to survive a factual jurisdictional challenge. *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020).

Branson's arguments are not to the contrary. Branson argues that the Velazquez declaration does not show that the individuals counted are in the putative class. (Dkt. No. 29 at 3.) To be sure, the putative class includes individuals who worked for OnTrac as a "salaried [position] at any time" during the relevant period. (Compl. ¶ 27.) However, Plaintiff was himself a "Service Provider" who was not a direct, salaried employee of OnTrac. (*See* Dkt. No. 28-1 at ¶ 3.) Accordingly, OnTrac reasonably construed the putative class to encompass Service Providers such as Branson—particularly because OnTrac's business model does not appear to encompass salaried delivery drivers. (*Id.*; *see also* Dkt. No. 36 at 4–5.) The Velazquez declaration therefore plausibly supports the assumption that the putative class has approximately 5,060 members who worked during the applicable limitations period.

The remainder of OnTrac's assumptions were reasonable. The Velazquez declaration identified that Service Providers worked across a combined total of 100,163 workweeks during the relevant limitations period, and that no Service Provider worked 41 or more weeks during that period. OnTrac's assumption that the putative class received a noncompliant wage statement in every assumed pay period is supported by looking at Branson's complaint—OnTrac was not required to introduce evidence of the violation rate. *See Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025). The complaint alleged that "[t]hroughout the statutory period, Defendants failed to furnish Plaintiff and the Class with accurate, itemized wage statements" and that "[a]t all relevant times, the conduct at issue was part of a continuous and ongoing pattern of

3

behavior." (Compl. ¶¶ 15, 25.) These allegations, as well as the nature of Branson's misclassification-based wage-statement claim, support OnTrac's assumption of a 100% violation rate. *See Perez*, 131 F.4th at 808–10; *Naveja v. Primerica, Inc.*, No. 20-cv-01298-MCE-KJN, 2021 WL 1961761, at *4 (E.D. Cal. May 17, 2021).

As to OnTrac's assumption of weekly payment, Branson does not contest that he and other members of the putative class were paid weekly. OnTrac has also established that the amount in controversy has been met regardless of whether members of the putative class were paid weekly or biweekly. (Dkt. No. 28 at 18 n.4.)

Finally, Branson's argument regarding OnTrac's attorneys' fees calculation is derivative of his argument regarding the wage statement claim calculations. (Dkt. No. 29 at 4.) Because the wage statement claim calculations were supported by reasonable assumptions, so too was the attorneys' fees calculation.

***Conclusion***. For the foregoing reasons, the motion to remand is denied.

**IT IS SO ORDERED.**

Dated: April 9, 2026

_____
RITA F. LIN
United States District Judge

4